BAP CASE NO. NC-25-1238
BANKRUPTCY CASE NO. 24-10545-CDN
CHAPTER 11

---

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**FOR THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

WILLIAM ANDREW, as the general
partner of Live Oak Investments LP
Appellant

vs.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS; LEFEVER MATTSON INC.
Appellees.

---

**APPELLANTS' OPENING BRIEF**

---

On Appeal From the United States Bankruptcy Court
Northern District of California, Santa Rosa Division
Honorable Charles D. Novak Presiding

Thomas P. Kelly III, Attorney at Law
Law Offices of Thomas P. Kelly III P.C.
CA 230699, OR 080927, DC 1000147
50 Old Courthouse Square, Suite 609
Santa Rosa, California, 95404-4926
Telephone : 707-545-8700
Facsimile : 707-542-3371
Email : tomkelly@sonic.net
Attorney for Appellant William Andrew

## **TABLE OF CONTENTS**

| I. | STATEMENT OF THE CASE | 1 |
|---|---|---|
| II. | PENDING APPLICATION FOR APPELLATE STAY | 1 |
| III. | STATEMENT OF JURISDICTION | 2 |
| IV. | STANDARD OF REVIEW | 3 |
| V. | STATEMENT OF ISSUES PRESENTED | 3 |
| VI. | STATEMENT OF RELEVANT FACTS | 4 |
| VII. | LEGAL ARGUMENT | 11 |
| | A. LFM was disassociated from Live Oak upon filing a bankruptcy petition. | 11 |
| | B. The Live Oak agreement is a non-assumable executory contract under 11 U.S.C. §365. | 14 |
| | C. LFM breached the Live Oak partnership agreement prior to filing the petition. | 16 |
| VIII. | CONCLUSION AND STATEMENT OF RELIEF SOUGHT | 19 |
| IX. | STATEMENT REGARDING ORAL ARGUMENT | 21 |
| X. | CERTIFICATION OF INTERESTED PARTIES & RELATED CASES | 22 |
| XI. | CERTIFICATE OF COMPLIANCE | 24 |

## TABLE OF AUTHORITIES

| **STATUTES** | |
|---|---|
| 11 U.S.C. § 362 | 3, 10 |
| 11 U.S.C. § 365 | 14, 15, 16, 19 |
| 11 U.S.C. § 365(c)(1) | 15 |
| 11 U.S.C. § 365(g) | 18 |
| 11 U.S.C. § 541(c)(1) | 12 |
| 11 U.S.C. § 541(c)(1)(B) | 12 |
| 28 U.S.C. § 158(a)(1) | 2, 3 |
| 28 U.S.C. § 158(d)(1) | 2 |
| Cal. Comm. Code § 2210 | 15 |
| Cal. Corp. Code § 15901.02(ak) | 12, 13 |
| Cal. Corp. Code § 15906.03 | 12 |
| Cal. Corp. Code § 16601 | 3, 4, 11, 12, 15, 16, 19 |
| Cal. Corp. Code § 16601(6)(A) | 11, 19 |
| Cal. Corp. Code § 16603 | 11, 12, 15, 19 |
| Cal. Corp. Code § 16603(1) | 11, 15 |
| Ohio Revised Code §§ 1775.23 | 14 |
| Ohio Revised Code §§ 1782.29 | 14 |
| | |
| **CASES** | |
| *Butner v. United States* 440 U.S. 48 (1979) | 12, 19 |
| *Evans v. Galardi* 16 Cal.3d 300 (1976) | 12, 13 |
| *Farmland Irrigation Co. v. Dopplmaier* 48 Cal. 2d 208 (1957) | 15 |
| *Fotouhi v. Mansdorf* 427 B.R. 798 (2010) | 12 |
| *Francis v. Wallace* 505 B.R. 914 (B.A.P. 9th Cir. 2014) | 3 |
| *Fursman v. Ulrich* 440 B.R. 821 (2010) | 16 |
| *In re Cardinal Industries Inc.* 105 B.R. 834 (1989) | 13, 19 |
| *In re Catapult Entertainment Inc.* 165 F.3d 747 (1999) | 15, 16, 19 |
| *In re City of Desert Hot Springs* 339 F.3d 782 (9th Cir. 2003) | 2 |
| *In re Cutler* 165 B.R. 275 (1994) | 16 |

| | |
|---|---|
| *In re Ehmann* 319 B.R. 200  (2005) | 16 |
| *In re Mason* 709 F.2d 1313 (9th Cir. 1983) | 2 |
| *In re SK Foods L.P.* 676 F.3d 798 (9th Cir. 2012) | 2 |
| *In re Warner* 480 B.R. 641 (2012) | 18 |
| *In re Westwood Shake & Shingle, Inc.* 971 F.2d 387 (9th Cir. 1992) | 2 |
| *Johnson v. Johnson* 2016 U.S. Dist. LEXIS 38106 (2016) | 12, 19 |
| *Mansdorf v. Epps* 2011 U.S. Dist. LEXIS 171825 (2011) | 12, 19 |
| *Mission Prod. Holdings v. Tempnology* LLC 139 S. Ct. 1652 (2019) | 14, 19 |
| *Preblich v. Battley* 181 F.3d 1048 (9th Cir. 1999) | 2 |
| *Yellow Express, LLC v. Dingley* 514 B.R. 591 (B.A.P. 9th Cir. 2014), aff'd, 852 F.3d 1143 (9th Cir. 2017) | 3 |
| **TREATISES** | |
| 3 Collier on Bankruptcy P 365.02(2)(b) (16th 2023) | 14 |

# I. STATEMENT OF THE CASE

William Andrew as the general partner of the Debtor-in-possession Live Oak Investments LP (hereinafter "Andrew") presents this appeal for review of the order of the United States Bankruptcy Court, Northern District of California, Santa Rosa Division (hereinafter "Bankruptcy Court") holding that the October 9, 2025, vote of the partnership of Debtor Live Oak Investments (hereinafter "Live Oak") violated the automatic stay and hence was void.

This appeal is taken from the decision and order by the Bankruptcy Court entered on November 20, 2025 bearing docket entry number 2891 in the record of the underlying bankruptcy case bearing case number 24-10545 and case name *In re LeFever Mattson Inc*. (hereinafter "Stay Order"). Live Oak is a separate entity which is the subject of a separate bankruptcy case bearing case number 24-10511 and bearing case name *In re Live Oak Investments LP* which has been administratively consolidated into the main case. Live Oak was a real estate partnership which pre-petition had Debtor LeFever Mattson Inc. (hereinafter "LFM") as the managing partner.

Due to the issues and actions of LFM described below, the partnership of Live Oak held a partnership meeting on October 9, 2025 and voted to remove LeFever Mattson Inc. as the managing member. The Bankruptcy Court held that this vote violated the automatic stay and declared the vote void in the Stay Order. The present appeal follows.

## II. PENDING APPLICATION FOR APPELLATE STAY

Pursuant to FRBP §8005, on December 21, 2025 Andrew applied to the Bankruptcy Court for an appellate stay bearing docket entry 3192-1. This application was heard at 11:00am on January 21, 2026. This application was denied by the Bankruptcy Court at that hearing, and Andrew subsequently applied to this Court for a stay the same day which remains pending at present.

The Bankruptcy Court subsequently entered an order denying the stay

application on January 24, 2026. A copy of this order is attached to the supplemental declaration of Thomas P. Kelly III which was filed with this Court on January 25, 2026 bearing docket entry 7-1. The order states that the stay application was denied for the reasons stated on the record. No transcript of the hearing on the stay application is presently available.

### III. STATEMENT OF JURISDICTION

The Bankruptcy Appellate Panel for the United States Court of Appeals for the Ninth Circuit Court has jurisdiction for bankruptcy appeals pursuant to 28 U.S.C. §158(d)(1), and specifically for appeals from the Bankruptcy Court.

The Stay Order of the Bankruptcy Court, which is the subject of the present appeal, arose from a motion by Appellee Official Committee of Unsecured Creditors (hereinafter "Appellee") alleging a violation of the automatic stay and declaring actions taken in violation thereof to be void. The Stay Order granting Appellee's motion was entered on November 20, 2025 bearing docket entry number 2891. (Appellant's Excerpts of Record Ex. 22; hereinafter "AER").

This is a final, appealable order within the meaning of 28 U.S.C. §158(a)(1). (*In re SK Foods, L.P.*, 676 F.3d 798, 801 (9th Cir. 2012); *Preblich v. Battley*, 181 F.3d 1048, 1055–56 (9th Cir. 1999); *In re Westwood Shake & Shingle, Inc.*, 971 F.2d 387, 389 (9th Cir. 1992)).

The Ninth Circuit has applied a 'pragmatic' approach to deciding whether orders in bankruptcy cases are final, and has recognized that certain proceedings in a bankruptcy case are distinct and conclusive "... either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." (*In re City of Desert Hot Springs*, 339 F.3d 782, 788 (9th Cir. 2003), citing *In re Mason*, 709 F.2d 1313, 1317 (9th Cir. 1983)).

In the present case, the Stay Order was a final, appealable order within the scope of 28 U.S.C. §158(a)(1) as it fully adjudicated the subject matter before the Bankruptcy Court, the rights between the parties, and resolved the ultimate issue of

the question of a violation of the automatic stay.

## IV. STANDARD OF REVIEW

The Bankruptcy Court's decision finding a violation of the automatic stay is a question of law and therefore reviewed *de novo*. "A bankruptcy court's determination that the automatic stay was violated is a question of law subject to *de novo* review." (*Yellow Express, LLC v. Dingley*, 514 B.R. 591, 595 (9th Cir. BAP 2014), *aff'd on other grounds*, 852 F.3d 1143 (9th Cir. 2017)). "*De novo* review requires that we consider a matter anew, as if no decision had been made previously." (*Francis v. Wallace*, 505 B.R. 914, 917 (9th Cir. BAP 2014)).

## V. STATEMENT OF ISSUES PRESENTED

The following issues are presented in this appeal:

1.     Did the Bankruptcy Court err when it held that the actions taken at the partnership meeting for Debtor on October 9, 2025 violate the automatic stay under 11 U.S.C. §362?

2.     Did the Bankruptcy Court apply the wrong legal standard when it held that the actions taken at the partnership meeting for Debtor on October 9, 2025 violate the automatic stay under 11 U.S.C. §362?

3.     Did the Bankruptcy Court err when it held that the partnership agreement for Debtor was fully assumable and assignable as an executory contract?

4.     Did the Bankruptcy Court apply the wrong legal standard when it held that the partnership agreement for Debtor was fully assumable and assignable as an executory contract?

5.     Did the Bankruptcy Court err when it held that the automatic stay always prevents the removal of a general partner from a partnership even for cause such as fraud and breach of fiduciary duty?

6.     Did the Bankruptcy Court apply the wrong legal standard when it held that the automatic stay always prevents the removal of a general partner from a partnership even for cause such as fraud and breach of fiduciary duty?

7. Did the Bankruptcy Court err when it held that upon the filing of a bankruptcy petition a partner was not automatically disassociated under Cal. Corp. Code § 16601?

8. Did the Bankruptcy Court apply the wrong legal standard when it held that upon the filing of a bankruptcy petition a partner was not disassociated under Cal. Corp. Code § 16601?

## VI. RELEVANT FACTS AND PROCEDURAL HISTORY

Live Oak was formed on March 24, 2015 bearing California Secretary of State entity number 2015-08600007. Prior to the formation of Live Oak, in 2004 LFM purchased an apartment complex named Southwood Place Apartments located at 410 Buck Avenue, Vacaville, California, 95688-6811 along with several investors. (Hereinafter "Southwood Apartments"). This was confirmed in a letter from LFM to the investors dated November 22, 2004. (AER Ex. 11, pg. 90 of 960).

On April 21, 2015, LFM notified the investors of Live Oak in a letter that in order to complete a refinance of Southwood Apartments the proposed lender required the formation of a business entity. (AER Ex. 11, pg. 92 of 960).

To that end, LFM and Kenneth Mattson (hereinafter "Mattson") formed Live Oak, and then prepared a proposed partnership agreement. In exchange for a percentage interest in the Live Oak, the investors transferred their individual interests in Southwood Apartments to the Live Oak. The partnership agreement was executed effective March 25, 2015. (Hereinafter "Partnership Agreement"; AER Ex. 12, pgs. 98-133 of 960).

Pursuant to the terms of the Partnership Agreement, LFM was designated as the General Partner for Live Oak. (AER Ex. 12, pg. 104 of 960). The Partnership Agreement also provided for the office of President. (AER Ex. 12, pg. 114 of 960, §5.2). Pursuant to the terms of the Partnership Agreement, the President was nominated by the General Partner, and the Partnership Agreement directly nominated Mattson as the President. (AER Ex. 12, pg. 104 of 960, §5.2.3).

Under the terms of the Partnership Agreement, the partners of Live Oak are equity security holders in Live Oak. These interests are confirmed in the Omnibus List of Equity Security Holders filed by LFM on November 15, 2024 bearing docket entry number 353 in the parallel bankruptcy case of *LeFever Mattson Inc*. bearing case number 24-10545. (Hereinafter "LFM Bankruptcy Case"). (AER Ex. 12, pgs. 156-157 of 960).

On June 28, 2024 LFM solicited by letter the agreement of the limited partners to sell Southwood Apartments. (AER Ex. 12, pgs. 156-157 of 960). A sufficient number of partners agreed to sell the property, and on August 29, 2024 it was sold for $10,800,000.00, which resulted in a net amount paid to Live Oak of $3,971,116.96. (AER Ex. 12, pgs. 139-140 of 960).

On September 4, 2024, these funds were deposited into Live Oak's account at Citizens Business Bank bearing account number XXXXX0673. This deposit is was disclosed in the October 28, 2024 operating report for Live Oak and is reflected in that operating report which includes the bank account statement as follows:

| Deposits Date | Description | Amount |
|---|---|---|
| 09/04/2024 | DEPOSIT | $3,971,116.96 |
| | | 1 item(s) totaling $3,971,116.96 |

(AER Ex. 12, pg. 181 of 960).

Without any notice to the other partners of Live Oak, and without any partnership meeting, the same day as the funds were deposited, September 4, 2024, LFM acting as the general partner transferred substantial sums from Live Oak to itself. These consisted of three transactions in the amount of $1,200,000.00, $324,000, and $842,418 for a total of $2,366,418.00. The first transaction was from Live Oak's money market account at Citizens Bank which is reflected in the same operating report as follows:

| Other Debits | | |
|---|---|---|
| Date | Description | Amount |
| 09/04/2024 | OTC Transfer | $1,200,000.00 |
| | | 1 item(s) totaling $1,200,000.00 |

(AER Ex. 12, pg. 181 of 960).

The second and third transactions were paid from Live Oak's property trust account also at Citizens Bank which is reflected in the same operating report as follows:

| Other Debits | | |
|---|---|---|
| Date | Description | Amount |
| 09/04/2024 | 399740 OLB TRANSFER SPCLTY AA XXXXX6251 | $324,000.00 |
| 09/04/2024 | 400467 OLB TRANSFER SPCLTY AA XXXXX6251 | $842,418.00 |
| | | 2 item(s) totaling $1,166,418.00 |

(AER Ex. 12, pg. 182 of 960).

LFM maintains this represents the 21.214% ownership interest in Live Oak as well as a sale commission provided in the Partnership Agreement of 3.00%. (AER Ex. 11, pgs. 127-128 of 960, §11.14).

LFM never distributed the remaining balance of the funds to the other partners. These transactions were performed by LFM without any notice to the other partners, and without any authorization in the form of a partnership vote or any document indicating ratification or approval by the other partners.

The Partnership Agreement provides in section 3.8 entitled "Priority Over Other Partners" that no partner is to receive preference over any other:

> "No Partner shall have priority over any other partner, with respect to the return of a Capital Contribution, or distributions or allocations of income, gain, losses, deductions, credits or items thereof."
> (AER Ex. 11, pg. 111 of 960, §3.8).

The Partnership Agreement also provides in section 4.7 entitled "Liquidating Proceeds" which specifies the manner in which funds are to be distributed to the partners:

> "Notwithstanding any other provisions of this Agreement to the contrary, when there is a distribution in liquidation of the Partnership, or when any Partner's interest is liquidated, all items of income and loss first shall be allocated to the Partners' Capital Accounts under this

Article Four, and other credits and deductions to the Partners' Capital Accounts shall be made before the final distribution is made. The final distribution to the Partners shall be made to the Partners to the extent of and in proportion to their positive Capital Account balances."
(AER Ex. 11, pg. 113 of 960, §4.7).

Eight days after making these transfers, on September 12, 2024 LFM filed the present case for Live Oak, the LFM Bankruptcy Case, and cases for 57 other entities. There is no dispute that LFM never obtained any authorization to transfer $2,366,418.00 from Live Oak's accounts to itself.

LFM was fully aware it would be filing a bankruptcy petition for Live Oak immediately after transferring the funds to itself. For that reason, the bankruptcy filings were part of a common plan or scheme carried out by LFM to benefit itself and Mattson by first acquiring the funds and then preventing any challenge to these transfers by the other partners due to the bankruptcy filings.

The transfers and subsequent bankruptcy filing carried out by LFM were also clearly improper as Live Oak was solvent at all times. This is demonstrated by the list of 20 largest creditors filed on behalf of Live Oak by LFM on September 25, 2024. The list is entirely blank as there were no creditors for Live Oak at the time of the bankruptcy case filing. (AER Ex. 12, pg. 185-187 of 960).

This is further demonstrated by the schedules filed on behalf of Live Oak by LFM on November 15, 2024. The schedules list a total of three claims totaling $23,615.62 of which LFM claims for itself the sum of $18,798.64 as an "unpaid distribution." These claims are set forth in Schedule F as follows:

| Line | Nonpriority Creditor's Name | Address 1 | Address 2 | City | State | Zip | Basis for claim | Subject to offset (Y/N) | Contingent | Unliquidated | Disputed | Amount of claim |
|------|------------------------------|-----------|-----------|------|-------|-----|-----------------|--------------------------|------------|--------------|----------|------------------|
| 3.1 | A & O Cleaning | Address on file | | | | | Trade | | | | | $70.00 |
| 3.2 | Home Tax Service of America, Inc., dba LeFever Mattson Property Management | 6359 Auburn Blvd. | | Citrus Heights | CA | 95621 | Payroll, maintenance and other expense reimbursements | | | | | $4,748.98 |
| 3.3 | LeFever Mattson, a California Corporation | 6359 Auburn Blvd. | | Citrus Heights | CA | 95621 | Unpaid Distribution | | | | | $18,798.64 |
| | | | | | | | | | | | TOTAL: | $23,615.62 |

(AER Ex. 12, pg. 212 of 960).

On October 7, 2025, the creditors William N. Andrew and Sally G. Andrew Revocable Trust dated June 21, 2001 and the Burgess Trust dated October 9, 2006

filed a Notice of Partnership Meeting bearing docket entry number 2530 in the record of the LFM Bankruptcy Case. The stated purpose of the meeting as reflected in the notice was as follows:

> "The basis of the action to remove the current General Partner is that LeFever Mattson Inc. took actions that are in direct violation of the Partnership Agreement which constitutes cause for removal. Specifically, that on September 4, 2024 LeFever Mattson Inc. distributed $842,418 to itself from the accounts of Live Oak Investments L.P. representing a 21.6% share of the proceeds of the sale of Southwood Apartments, which was the sole real estate asset of Live Oak Investments L.P. At the time of this distribution, LeFever Mattson Inc. did not distribute any sale proceeds to any of the other partners.
> This was a direct violation of the Partnership Agreement §3.8 entitled "Priority Over Other Partners" which states as follows: "No Partner shall have priority over any other partner, with respect to the return of a Capital Contribution, or distributions or allocations of income, gain, losses, deductions, credits or items thereof."
> This was also a direct violation of the Partnership Agreement §4.7 entitled "Liquidating Proceeds" which states as follows: "Notwithstanding any other provisions of this Agreement to the contrary, when there is a distribution in liquidation of the Partnership, or when any Partner's interest is liquidated, all items of income and loss first shall be allocated to the Partners' Capital Accounts under this Article Four, and other credits and deductions to the Partners' Capital Accounts shall be made before the final distribution is made. The final distribution to the Partners shall be made to the Partners to the extent of and in proportion to their positive Capital Account balances."
> On the basis of the foregoing actions, cause exists to remove LeFever Mattson Inc. as General Partner. At this partnership meeting a vote will be held on this removal as well as the other matters set forth above." (AER Ex. 12, pgs. 214-216 of 960).

On October 9, 2025 LFM appeared at the meeting through its attorney at the time David Taylor and through the chief restructuring officer Bradley Sharp. LFM also cast votes during the partnership meeting. As a result of the partnership vote, LFM was removed as the general partner of Live Oak, Mattson was removed as president of Live Oak, William Andrew was appointed as the new general partner of Live Oak and the president, and Keller Benvenutti Kim LLP was removed as the legal representative of Live Oak and replaced with the Law Offices of Thomas P. Kelly III P.C..

On October 15, 2025 the special investigation counsel Donald S. Davidson filed the joint investigation report in the affairs of LFM bearing docket entry 2568

in the record of this case. (Hereinafter "Investigation Report"; AER Ex. 12, pgs. 218-374 of 960). Of particular relevance to the present matter, "Attachment I" to the Investigation Report specifically addresses the fraud of LFM through transactions whereby LFM moved funds through Live Oak.

The first of these transactions is detailed in Attachment I-1 and reflects an October 5, 2018 payment from LFM to Live Oak of $481,000 followed by a subsequent payment from Live Oak to Sienna Pointe Apartments of $481,000, meaning that Live Oak did not incur any liability to any third party, nor did Live Oak retain any LFM funds. There are no claims here at all as the entire amount was transferred into and out of Live Oak. (AER Ex. 12, pg. 369 of 960).

The second of these transactions is detailed in Attachment I-2 and reflects an August 7, 2019 payment from multiple entities to Live Oak totally $445,000 followed by a subsequent payment from Live Oak to LFM $445,000, meaning that again Live Oak did not incur any liability to any third party, nor did Live Oak retain any LFM funds. There are no claims here at all as the entire amount was transferred into and out of Live Oak. (AER Ex. 12, pg. 370 of 960).

The third of these transactions is detailed in Attachment I-3 and reflects a December 10, 2019 payment by Live Oak to Sterling Pointe Apartments in the amount of $2,300,000.00. Once again, Live Oak did not incur any liability to any third party, nor did Live Oak retain any LFM funds. In this instance, Live Oak has a claim against Sterling Pointe Apartments in the amount of $2,300,000.00 which LFM and the OCUC have never pursued nor have they filed any proof of claim against Sterling Pointe Apartments. (AER Ex. 12, pg. 371 of 960).

The fourth of these transactions is detailed in Attachment I-4 and reflects two December 31, 2019 payments by Live Oak to Carmichael Apartments in the amount of $940,000.00 and to Vaca Villa Apartments in the amount of $1,040,000.00. Once again, Live Oak did not incur any liability to any third party, nor did Live Oak retain any LFM funds. In this instance, Live Oak has claims

against Carmichael Apartments and Vaca Villa Apartments in the total amount of $1,980,000.00 which LFM and the OCUC have never pursued nor have they filed any proof of claim against Carmichael Apartments or Vaca Villa Apartments. (AER Ex. 12, pg. 372 of 960).

The fifth of these transactions is detailed in Attachment I-5 and reflects a May 18, 2020 payment by Live Oak to Walnut Crest Apartments in the amount of $295,000.00. Once again, Live Oak did not incur any liability to any third party, nor did Live Oak retain any LFM funds. In this instance, Live Oak has a claim against Walnut Crest Apartments in the total amount of $295,000.00 which LFM and the OCUC have never pursued nor have they filed any proof of claim against Walnut Crest Apartments. (AER Ex. 12, pg. 373 of 960).

The sixth and last of these transactions is detailed in Attachment I-6 and reflects an October 18, 2022 payment by Live Oak to Sienna Pointe Apartments in the amount of $560,000.00. Once again, Live Oak did not incur any liability to any third party, nor did Live Oak retain any LFM funds. In this instance, Live Oak has claims against Sienna Pointe Apartments in the total amount of $560,000.00 which LFM and the OCUC have never pursued nor have they filed any proof of claim against Sienna Pointe Apartments. (AER Ex. 12, pg. 374 of 960).

On October 24, 2025 the Official Committee of Unsecured Creditors for the LFM case (Hereinafter "OCUC") filed a proposed stipulation granted the OCUC standing to pursue the interests of LFM as it related to Live Oak. (AER Ex. 1).

On October 24, 2025 the OCUC also filed a motion with the Bankruptcy Court to have the October 9, 2025 partnership vote for Live Oak declared void as violating the automatic stay pursuant to 11 U.S.C. §362. (AER Exs. 2 & 3).

On October 31, 2025 the Bankruptcy Court held a hearing on the OCUC's stay violation motion. Following that hearing, on November 4, 2025 the Bankruptcy Court entered an order granting standing to the OCUC to pursue a stay violation on behalf of LFM, and set a further hearing for the stay violation motion

on November 13, 2025.

On November 13, 2025 the Bankruptcy Court held a second hearing on the stay violation motion. Following that hearing, on November 20, 2025 the Bankruptcy Court entered the Stay Order thereby granting the OCUC motion and declaring the October 9, 2025, partnership vote for Live Oak as void. (AER Ex. 22).

On November 30, 2025, Andrew timely filed a notice of appeal of the order declaring the partnership vote for Live Oak as void. (AER Ex. 23).

## VII. LEGAL ARGUMENT

### A. LFM was disassociated from Live Oak upon filing a bankruptcy petition.

Live Oak is a California partnership, and under California law upon the filing of a bankruptcy petition a partner is automatically disassociated from the partnership pursuant to Cal. Corp. Code § 16601 which provides in part as follows:

"A partner is dissociated from a partnership upon the occurrence of any of the following events:

(6) The partner's act or failure to act in any of the following instances:

(A) By becoming a debtor in bankruptcy."

(Cal. Corp. Code § 16601(6)(A)).

The effect of dissociation means that LFM lost all right to participate in the management of Live Oak. As Cal. Corp. Code § 16603 provides: "Upon a partner's dissociation, all of the following apply: (1) The partner's right to participate in the management and conduct of the partnership business terminates." (Cal. Corp. Code § 16603(1)).

There is no reasonable dispute on this point. In every California and Ninth Circuit bankruptcy decision referencing this California code section the result is the same - ironclad language that upon the filing of a petition, the partner is disassociated as a matter of law automatically. Below are several examples.

"In this instance, Defendant's bankruptcy filing triggered his automatic

dissociation from the partnership. See Cal Corp. Code § 16601(6)(A)." *(Johnson v. Johnson*, E. Dist. Cal. 2016 U.S. Dist. LEXIS 38106, 2016 LX 35666, 2016 WL 1138178).

"... [The debtor] was dissociated from the partnership as a matter of law on the day he filed his bankruptcy petition. Cal. Corp. Code § 16601(6)(A)." (*Mansdorf v. Epps*, N. Dist. Cal. 2011 U.S. Dist. LEXIS 171825, 2011 LX 43866).

Upon the debtor's "... filing of the bankruptcy petition, he became a dissociated partner. Cal. Corp. Code § 16601(6)(A)." (*Fotouhi v. Mansdorf*, N. Dist. Cal. 427 B.R. 798, 802 (2010)).

The Bankruptcy Court held that this California statute does not apply. "The pertinent language of California Corporations Code §§ 15906.03 and 16603 are impermissible ipso facto clauses that are inconsistent with Bankruptcy Code § 541(c)(1)(B) and thus violative of the Constitution's Supremacy Clause." (AER Ex. 22, 448:15-18). The Bankruptcy Court did not cite any precedent or authority for this statement.

In contrast to this holding, it is black letter law that a debtor's pre-bankruptcy rights in property are determined according to state law. (*Butner v. United States*, 440 U.S. 48, 55 (1979)). Under California law, the interest of a limited partner is referred to as the 'transferable interest' which encompasses the individual partner's stake in the partnership, including rights to distributions, profits, and losses. (Cal. Corp. Code § 15901.02(ak)). As the California Supreme Court has repeatedly held, partners to a limited partnership have no property interest in specific partnership assets. (*Evans v. Galardi*, 16 Cal.3d 300, 307 (1976)). Rather, the transferable interest represents only the right to receive a share of the profits or income, and to the return of their contribution. (*Id*.).

As discussed above, LFM has already received its share of the profits, income, and the return of their contribution arising from the sale of the Southwood Apartments. On September 4, 2024 LFM made three payments to itself in the total

amount of $2,366,418.00. (AER Ex. 12, pg. 181-182 of 960). This represents the 21.214% ownership interest of LFM in Live Oak as well as a sale commission provided in the Partnership Agreement of 3.00%. (AER Ex. 12, pgs. 127-128 of 960, §11.14).

Under California's partnership law, once LFM was paid out it had no further transferable interest in Live Oak under Cal. Corp. Code § 15901.02(ak). The entirety of the transferable interest was already distributed out of Live Oak and to LFM prior to the filing of the bankruptcy petitions.

In the present case, the Bankruptcy Court misconstrued California law under which the interest of a limited partner is restricted to the transferable interest under Cal. Corp. Code § 15901.02(ak). The Bankruptcy Court instead created a new 'managerial interest' which does not appear in any California statute or case law. "The court rejects Andrew's argument that LM's managerial rights terminated when it filed its Chapter 11 bankruptcy." (AER Ex. 22, pg. 448:14-15).

This ruling directly contradicts the holding of the California Supreme Court that partners in a limited partnership have no property interest in specific partnership assets. (*Evans v. Galardi, supra* 307). There is no other interest held by a partner to a California partnership.

The Bankruptcy Court did not apply California law in the Stay Order, but instead applied the partnership law of Ohio. The Bankruptcy Court cited to *In re Cardinal Industries* 105 B.R. 834 (Bankr. S.D. Ohio 1989; "*Cardinal*") as follows: "LM's pre-petition property rights thus included its general partnership duties under the Agreement. See, e.g., *Cardinal Indus., Inc. v. Buckeye Fed. Sav. & Loan Ass'n (In re Cardinal Indus., Inc.)*, 105 B.R. 834 (Bankr. S.D. Ohio 1989)." (AER Ex. 22, pg. 448:7-13).

The Court in *Cardinal* was interpreting the partnership law of Ohio, not California, which actually creates three interests bearing different names and meanings as set forth in the case:

"Uniform partnership law gives a general partner in a limited partnership an interest in the partnership (the 'Partnership Interest'), a right to participate in the management (the 'Management Interest'), and status as a tenant in partnership (the 'Tenancy Interest'). See Ohio Revised Code §§1775.23 and 1782.29." (*Cardinal* at 848).

California law does not have. nor does it create. any partnership interest referred to as a 'partnership interest' or a 'management interest' or a 'tenancy interest.' There is only the transferable interest as defined by Cal. Corp. Code § 15901.02(ak).

LFM was disassociated from Live Oak upon the filing of a bankruptcy petition, and hence there was no interest held by LFM which was property of the bankruptcy estate to which the automatic stay could apply.

## B. The Live Oak agreement is a non-assumable executory contract under 11 U.S.C. §365.

The partnership agreement for Live Oak was executed effective March 25, 2015. (AER Ex. 12, pgs. 98-133 of 960). It included more than a dozen investors and LFM as partners, with LFM acting as the general partner.

In the present case, the Bankruptcy Court refused to address the fact that the Live Oak partnership agreement is clearly an executory contract under 11 U.S.C. §365. "Second, this Court is not determining whether LM's general partnership duties arise from an executory contract that may not be assumable under Bankruptcy Code §365." (AER Ex. 22, pg. 450:6-8).

The general rule is that partnership agreements are executory contracts. "Partnership agreements generally are executory contracts." (3 Collier on Bankruptcy P 365.02(2)(b) (16th 2023)). This is true because partners generally have a continuing duty to each other under any partnership agreement and hence is executory because "performance remains due to some extent on both sides." (*Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019)).

For that reason, a personal service contract is not assumable under 11 U.S.C. § 365 without the consent of the non-debtor partners. This stems from the Ninth Circuit's adoption of the 'hypothetical test' under 11 U.S.C. § 365(c)(1). ( *In re Catapult Entertainment, Inc*., 165 F.3d 747 (9th Cir. 1999)). In *Catapult*, the Ninth Circuit adopted the 'hypothetical test' where the debtor sought to assume non-exclusive patent licenses for video game technology. The Court reversed the bankruptcy court's approval, holding that federal patent law excused the licensors from accepting performance from a hypothetical assignee, thus barring assumption even without intent to assign. It explicitly rejected the 'actual test' and emphasized statutory plain meaning

The hypothetical test bars assumption of an executory contract if applicable non-bankruptcy law excuses the non-debtor party from accepting performance from anyone other than the original debtor, even if no assignment is intended. California contract law makes personal services non-delegable under Cal. Comm. Code § 2210 which prohibits delegation where the other party has a substantial interest in the original promisor's performance. "Rights likewise cannot be assigned if the assignment would materially impair the non-assigning party's chance of obtaining the performance he expected." *(Farmland Irrigation Co. v. Dopplmaier*, 48 Cal. 2nd 208, 222 (1957). For that reason, executory contracts are generally non-assignable without consent because the non-debtor bargained for the specific individual's performance. The Live Oak partnership agreement reflects this intent by having lengthy and detailed restrictions on transfers of partnership interests, and voids any alleged transfer without meeting the requirements. "Any Transfer or Encumbrance of a Partnership Interest without such approval shall be void." (AER Ex. 11, pg. 121, §8.2).

As discussed above, the filing of a bankruptcy petition causes dissociation of a partner under Cal. Corp. Code § 16601. In turn, the disassociation terminates the right to participate in management under Cal. Corp. Code § 16603(1). For that

reason, the bankruptcy estate acquires only the economic interest (e.g., rights to profits, losses, and distributions), not governance or management rights given that partnership agreements are executory contracts and hence non-assumable under 11 U.S.C. § 365(c) due to the personal services nature of partnerships and also the general unwillingness of non-debtor partners to accept a substitute.

While it would be correct that §541(c)(1) would override an *ipso facto* clauses in single-owner entities (*Fursman v. Ulrich*, 440 B.R. 821 (B.A.P. 9th Cir. 2010)) the same is not true of multi-party entities where other partners' interests are protected by limiting the bankruptcy estate's interest to economic rights only. (e.g., *In re Cutler*, 165 B.R. 275 (Bankr. D. Ariz. 1994); see also *In re Ehmann*, 319 B.R. 200 (Bankr. D. Ariz. 2005)).

In the present case, there is no reasonable dispute that the Live Oak partnership agreement was an executory contract both under applicable bankruptcy law and under California law. This is especially true given that it was a multi-party contract rendering it non-assumable under 11 U.S.C. § 365(c)(1). Consequently, no 'management interest' in Live Oak became property of the bankruptcy estate for LFM pursuant to the holding of the Ninth Circuit in *In re Catapult Entertainment, Inc.,* 165 F.3d 747 (9th Cir. 1999).

## C. LFM breached the Live Oak partnership agreement prior to filing the petition.

In the present case, LFM was already in breach of the Partnership Agreement before it ever filed a bankruptcy petition. As outlined above, without any notice to the other partners of Live Oak, and without any partnership meeting, on September 4, 2024 LFM made three payments to itself in the total amount of $2,366,418.00. (AER Ex. 12, pg. 181-182 of 960). This represents the 21.214% ownership interest of LFM in Live Oak as well as a sale commission provided in the Partnership Agreement of 3.00%. (AER Ex. 12, pgs. 127-128 of 960, §11.14).

LFM never distributed the remaining balance of the funds to the other

partners. These transactions were performed by LFM without any notice to the other partners, and without any authorization in the form of a partnership vote or any document indicating ratification or approval by the other partners. There is no dispute on this point - there has *never* been any evidence presented anywhere that LFM had authorization to make this distribution to itself.

The Partnership Agreement provides in section 3.8 entitled "Priority Over Other Partners" that no partner is to receive preference over any other:

> "No Partner shall have priority over any other partner, with respect to the return of a Capital Contribution, or distributions or allocations of income, gain, losses, deductions, credits or items thereof."
> (AER Ex. 11, pg. 111 of 960, §3.8).

The Partnership Agreement also provides in section 4.7 entitled "Liquidating Proceeds" which specifies the manner in which funds are to be distributed to the partners:

> "Notwithstanding any other provisions of this Agreement to the contrary, when there is a distribution in liquidation of the Partnership, or when any Partner's interest is liquidated, all items of income and loss first shall be allocated to the Partners' Capital Accounts under this Article Four, and other credits and deductions to the Partners' Capital Accounts shall be made before the final distribution is made. The final distribution to the Partners shall be made to the Partners to the extent of and in proportion to their positive Capital Account balances."
> (AER Ex. 11, pg. 113 of 960, §4.7).

Eight days after making these transfers, on September 12, 2024 LFM filed the present case for Live Oak, the LFM Bankruptcy Case, and cases for 57 other entities. There is no dispute that LFM never obtained any authorization to transfer $2,366,418.00 from Live Oak's accounts to itself.

LFM was fully aware it would be filing a bankruptcy petition for Live Oak immediately after transferring the funds to itself. For that reason, the bankruptcy filings were part of a common plan or scheme carried out by LFM to benefit itself and Mattson by first acquiring the funds and then preventing any challenge to these transfers by the other partners due to the bankruptcy filings.

It was this breach of the partnership agreement that gave rise to the vote to

remove LFM as general partner for cause. This was specifically stated in the notice of the partnership meeting as follows:

> "The basis of the action to remove the current General Partner is that LeFever Mattson Inc. took actions that are in direct violation of the Partnership Agreement which constitutes cause for removal. Specifically, that on September 4, 2024 LeFever Mattson Inc. distributed $842,418 to itself from the accounts of Live Oak Investments L.P. representing a 21.6% share of the proceeds of the sale of Southwood Apartments, which was the sole real estate asset of Live Oak Investments L.P.. At the time of this distribution, LeFever Mattson Inc. did not distribute any sale proceeds to any of the other partners.
> This was a direct violation of the Partnership Agreement §3.8 entitled "Priority Over Other Partners" which states as follows: "No Partner shall have priority over any other partner, with respect to the return of a Capital Contribution, or distributions or allocations of income, gain, losses, deductions, credits or items thereof."
> This was also a direct violation of the Partnership Agreement §4.7 entitled "Liquidating Proceeds" which states as follows: "Notwithstanding any other provisions of this Agreement to the contrary, when there is a distribution in liquidation of the Partnership, or when any Partner's interest is liquidated, all items of income and loss first shall be allocated to the Partners' Capital Accounts under this Article Four, and other credits and deductions to the Partners' Capital Accounts shall be made before the final distribution is made. The final distribution to the Partners shall be made to the Partners to the extent of and in proportion to their positive Capital Account balances."
> On the basis of the foregoing actions, cause exists to remove LeFever Mattson Inc. as General Partner. At this partnership meeting a vote will be held on this removal as well as the other matters set forth above. (RJN, Ex. E, pgs. 1-2).

A breach of an executory contract by a debtor-in-possession gives rise to a general claim against the estate for the non-breaching non-debtor party to the contract. (11 U.S.C. § 365(g)). And once the contract is breached, the debtor in possession can no longer enforce its provisions. (See, e.g., *In re Warner*, 480 B.R. 641, 650-51 (Bankr. N.D. W. Va. 2012)). LFM engaged in outright fraud by writing itself checks for millions of dollars right before filing a bankruptcy petition and without any notice or permission from the other partners. This was a spectacular and sinister effort to loot funds for LFM's own use and with the specific intent to defraud the remaining partners. There is overwhelming evidence to support the removal of LFM for cause given that it was in breach of the partnership agreement prior to filing a bankruptcy petition.

## VIII. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Appellant requests an order from this Court reversing the order of the Bankruptcy Court holding that there was a violation of the automatic stay and thereby declaring the vote of the Live Oak partnership to be void.

The present case is one where a disassociated partner transferred millions to itself on the eve of a bankruptcy petition. When the remaining partners voted to remove that partner for cause, the Bankruptcy Court held it was a stay violation arising from a 'management interest' derived from Ohio partnership law.

The Bankruptcy Court's Stay Order erroneously disregarded California law, which mandates automatic dissociation of a partner upon bankruptcy filing under Cal. Corp. Code § 16601(6)(A), stripping LFM of any management rights per § 16603(1). This is reinforced by consistent precedents like *Johnson vs. Johnson* and *Mansdorf vs. Epps*, confirming that no managerial interest enters the estate. The Court's reliance on inapplicable Ohio law from *In re Cardinal Industries* and its invention of a non-existent 'managerial interest' contravenes black-letter principles from *Butner vs. United States*, which defer to state law for pre-petition property rights.

Furthermore, the Live Oak Partnership Agreement qualifies as an executory contract under 11 U.S.C. § 365, non-assumable without consent due to its personal services nature, as per the Ninth Circuit's hypothetical test in *In re Catapult Entertainment*. In addition, LFM's pre-petition breach - unilaterally withdrawing $2,366,418 without partner approval or equal distribution - violates §§ 3.8 and 4.7 of the Agreement, constituting fraud and justifying removal for cause. This breach precludes LFM from enforcing the Agreement, rendering the vote to remove it valid and outside the automatic stay.

LFM had already received the totality of its economic interest through the fraudulent and self-serving transfer of millions only days prior to filing a bankruptcy petition. Under applicable California law, there is no other property

interest in Live Oak which was held by LFM at the time the partnership voted to remove LFM. For that reason, there was no violation of the automatic stay.

Dated: January 26, 2026

_____
Thomas P. Kelly III
Attorney for Appellant

## IX. STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument in this case as it may tend to assist the Panel in its deliberations.

Dated: January 26, 2026

_____
Thomas P. Kelly III
Attorney for Appellant

## X. CERTIFICATION OF INTERESTED PARTIES & RELATED CASES

As required by BAP Rule 8010(a)-1(c) made applicable to this proceeding under CAND Local Rule 16-4, Appellant William Andrew makes the following certifications:

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable the Court to evaluate possible disqualification or recusal.

Appellant William Andrew
c/o Thomas P. Kelly III, Esq.
50 Old Courthouse Square
Suite 609
Santa Rosa, California
95404

Chase Restated 1992 Chase Family Trust
John & Susan Chase, Trustees
c/o Daniel L. Egan Esq.
Wilke Fleury LLP
621 Capitol Mall, Suite 900
Sacramento, California
95814

Anderson 2001 Revocable Trust dated June 12, 2001
c/o Graham & Teresa Anderson, Trustees
129 Archer Drive
Santa Cruz, California
95060

The Willis McKelvey Rice and Linda Kay Rice Living Trust
c/o Willis & Linda Rice, Trustees
405 London Way
Sonoma, California
95476

Fleming Family Trust dated August 27, 1998
c/o John & Dominque Fleming, Trustees
350 Castenada Avenue
San Francisco, California
94116-1447

Fox Family Trust dated May 24, 2002
c/o Gary & Katherine Fox, Trustees
P.O. Box 1243
Fair Oaks, California
95628

Girardi Revocable Living Trust dated May1, 2002
c/o John & Marsi Giardi, Trustees
3265 Longhorn Ridge Road
Cameron Park, California
95682

Katherine Ogg
49 Lyell Street
Los Altos, California
94022

Ray & Kim Davis
14210 Angelina Drive
Bay Town, Texas
77523

Official Committee of Unsecured
Creditors
John D. Fiero & Jason H. Rosell
Pachulski Stang Ziehl & Jones LLP
One Sansome Street
34th Floor
Suite 3450
San Francisco, California
94104-4436
Telephone: 310-277-6910
Facsimile: 310-201-0760
Email: jfiero@pszjlaw.com,
jrosell@pszjlaw.com

LeFever Mattson Inc.
Live Oak Investments LP.
Thomas B. Rupp & Tobias S. Keller
Keller Benvenutti Kim LLP
425 Market Street
26th Floor
San Francisco, California
94105
Telephone: 415-496-6723
Facsimile: 650-636-9251
Email: trupp@kbkllp.com,
tkeller@kbkllp.com

The undersigned certifies that the following are known related cases and appeals:

24-10545 *In re LeFever Mattson Inc.*, United States Bankruptcy Court, Northern District of California, Santa Rosa Division

24-10511 *In re Live Oak Investments LP*, United States Bankruptcy Court, Northern District of California, Santa Rosa Division

Dated: January 26, 2026

Thomas P. Kelly III
Attorney for Appellant

# XI. CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, the undersigned counsel of record for Appellant William Andrew as the general partner of the Debtor-in-possession Live Oak Investments LP hereby certifies that this Application for Appellate Stay complies with the type volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,890 words. Counsel has relied upon the word count of the computer program used to prepare this brief, Wordperfect X5.

The undersigned further hereby certifies that Appellant's Opening Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Times New Roman 14-point font, a proportionally spaced typeface.

Dated: January 26, 2026

_____
Thomas P. Kelly III
Attorney for Appellant