# UNITED STATES BANKRUPTCY APPELLATE PANEL

## FOR THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

WILLIAM ANDREW, as the general
partner of Live Oak Investments LP
Appellant,

vs.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS; LEFEVER MATTSON INC.
Appellees.

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO EMERGENCY MOTION FOR APPELLATE STAY

On Appeal From the United States Bankruptcy Court
Northern District of California, Santa Rosa Division
Honorable Charles D. Novak Presiding

John D. Fiero (CA Bar No. 136557)
Steven W. Golden (*Pro Hac Vice*)
Hayley R. Winograd (*Pro Hac Vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, CA 94104
Telephone: 415-263-7000
Facsimile: 415-263-7010
E-mail: jfiero@pszjlaw.com
            sgolden@pszjlaw.com
            hwinograd@pszjlaw.com
Counsel for Appellee Official Committee
of Unsecured Creditors

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................................1

II. RELEVANT BACKGROUND ..............................................................................3

    A.    The Bankruptcy Cases and Andrew's Efforts to Seize Control of Live Oak ................................................................................................3

    B.    The Bankruptcy Court Finds that Andrew's Actions Violated the Automatic Stay ........................................................................................5

    C.    The Plan and Substantive Consolidation Motion .....................................7

    D.    The Appeal and the Stay Motions .............................................................8

III. ARGUMENT .......................................................................................................9

    A.    Legal Standard ..........................................................................................9

    B.    The Bankruptcy Court Did Not Abuse Its Discretion in Determining that Andrew is Unlikely to Succeed on the Merits ............11

    C.    The Bankruptcy Court Correctly Found that Andrew Will Not Suffer Irreparable Harm .......................................................................15

    D.    The Remaining Factors Weigh Against a Stay .......................................17

IV. CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bohm v. Howard (In re Howard)*,
422 B.R. 593 (Bankr. W.D. Pa. 2010), *aff'd*, 2011 WL 578777
(W.D. Pa. Feb. 9, 2011) ............................................................ 18, 19

*Butner v. United States*,
440 U.S. 48 (1979).................................................................11, 14

*Colonial Realty Co. v. River Bank Am. (In re Colonial Realty Co.)*,
122 B.R. 1 (Bankr. D. Conn. 1990) ........................................... 12

*Doe v. Trump*,
957 F.3d 1050 (9th Cir. 2020)................................................... 17

*Dynamic Fin. Corp. v. Kipperman (In re N. Plaza, LLC)*,
395 B.R. 113 (S.D. Cal. 2008)................................................... 18

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*,
318 B.R. 263 (S.D.N.Y. 2004)................................................... 19

*Eskanos & Adler, P.C. v. Leetien*,
309 F.3d 1210 (9th Cir. 2002)................................................... 19

*Fotouhi v. Mansdorf*,
427 B.R. 798 (N.D. Cal. 2010) .................................................. 14

*Gould v. Antonelli (In re Antonelli)*,
4 F.3d 984 (4th Cir. 1993).......................................................... 12

*In re All Year Holdings Ltd.*,
648 B.R. 434 (S.D.N.Y. 2022) ................................................... 13

*In re B & M Land and Livestock, LLC*,
498 B.R. 262 (Bankr. D. Nev. 2013) .......................................... 13

*In re Babcock & Wilcox*,
2000 WL 533492 (E.D. La. May 3, 2000)................................... 18

*In re Envision Healthcare Corp.*,
655 B.R. 701 (S.D. Tex. 2023) ......................................... 7, 12, 14

*In re First Prot., Inc.*,
440 B.R. 821 (B.A.P. 9th Cir. 2010)........................................... 13

*In re Greenberg*,
622 B.R. 60 (S.D. Cal. 2020)...................................................... 10

ii

*In re Haynes*,
    2015 WL 13916994 (C.D. Cal. Dec. 16, 2015) ................................................. 9

*In re Irwin*,
    338 B.R. 839 (E.D. Cal. 2006) .......................................................... 10, 17

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ............................................................ 15

*In re Plunkett*,
    23 B.R. 392 (Bankr. E.D. Wis. 1982) .................................................. 12

*In re Rice*,
    2020 WL 2079447 (Bankr. C.D. Cal. Apr. 23, 2020) ................................. 10, 17

*In re Wymer*,
    5 B.R. 802 (B.A.P. 9th Cir. 1980) ...................................................... 10

*Johnson v. Johnson*,
    2016 WL 1138178 (E.D. Cal. Mar. 23, 2016) .......................................... 14

*Mansdorf v. Epps*,
    2011 U.S. Dist. LEXIS 171825 (N.D. Cal. Aug 1, 2011) .............................. 13

*Mi Familia Vota v. Fontes*,
    111 F.4th 976 (9th Cir. 2024) ........................................................... 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................... 10

*United States v. Caraway*,
    2013 WL 4017431 (N.D. Cal. Aug. 1, 2013) ........................................... 9

*Yun Hei Shin v. Altman (In re Altman)*,
    2018 WL 3133164 (B.A.P. 9th Cir. June 26, 2018) .................................... 11

## STATUTES

11 U.S.C. § 362(a) ............................................................................. 19

11 U.S.C. § 362(a)(3) .......................................................................6, 11

11 U.S.C. § 541(a)(6) .......................................................................... 14

11 U.S.C. § 541(c)(1)(A) ................................................................... 2, 13

11 U.S.C. § 541(c)(1)(B) ................................................................... 7, 13

Cal. Civ. Code § 654 ..........................................................................11

Cal. Civ. Code § 655 ..........................................................................11

Cal. Corp. Code § 15901.02 ................................................................. 14

Cal. Corp. Code § 15906.03 .................................................................... 7

Cal. Corp. Code § 16601 ........................................................................ 6

Cal. Corp. Code § 16601(6)(A) .............................................................. 13

Cal. Corp. Code § 16603 ........................................................................ 7

Cal. Corp. Code § 16603(1) .................................................................. 13

## **<u>RULES</u>**

Fed. R. Bankr. P. 8007(b)(2)(B) ............................................................. 9

Fed. R. Bankr. P. 8013(d)(2)(A) ............................................................. 1

Fed. R. Bankr. P. 8013(d)-1 ................................................................... 1

LA:4911-0385-1147.6 52011.00005

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed

in the chapter 11 cases (the "<u>Cases</u>") of LeFever Mattson ("<u>LFM</u>") and its affiliated

debtors (collectively, the "<u>LFM Debtors</u>") and KS Mattson Partners, LP ("<u>KSMP</u>,"

and collectively with LFM and the LFM Debtors, the "<u>Debtors</u>") hereby files its

objection (the "<u>Objection</u>") to the *Emergency*[1] *Motion for Appellate Stay* [BAP

Docket No. 6-1] (the "<u>Motion</u>"), filed by appellant William Andrew ("<u>Andrew</u>").  In

support of its Objection, the Committee states as follows:

# I.

## PRELIMINARY STATEMENT[2]

Andrew fails to demonstrate that the Bankruptcy Court abused its discretion in

denying the extraordinary remedy of a stay pending resolution of the instant appeal

(the "<u>Appeal</u>").

**First**, as the Bankruptcy Court correctly found, Andrew has no likelihood of

success in the Appeal.  The law is clear: prepetition contract rights, including LFM's

management rights under the Partnership Agreement, constitute estate property under

---

[1] Though styled as an "emergency," Andrew failed to comply with Bankruptcy Rule 8013(d)(2)(A) and Rule 8013(d)-1 of the Rules of the United States Bankruptcy Appellate Panel of the Ninth Circuit.  Accordingly, the Committee respectfully submits that the Motion cannot be considered on an "emergency" basis.  In any event and as explained herein, no urgency exists. The Committee reserves all rights to respond to Andrew should he belatedly attempt to articulate an alleged exigency to this Panel.

[2] Capitalized terms used but not defined shall take on the meanings ascribed to them below.

LA:4911-0385-1147.6 52011.00005

section 541(a) of the Bankruptcy Code that is protected by the automatic stay. The Bankruptcy Court thus properly determined that Andrew's post-petition removal of LFM as Live Oak's general partner violated the automatic stay because LFM's management rights constitute property of the estate. Andrew's continued reliance on a California statute in support of his assertion that LFM somehow forfeited its prepetition management interests upon LFM's bankruptcy filing ignores fundamental principles of bankruptcy law and the United States Constitution's Supremacy Clause. As the Bankruptcy Court explained, section 541(c)(1)(A) overrides any state law effort to diminish such rights. For this reason alone, the Motion should be denied.

**Second**, Andrew cannot show that he will be irreparably harmed in the absence of a stay pending appeal. As the Bankruptcy Court made clear in its ruling, Andrew's argument that a stay will somehow prevent the "vanishment" of Live Oak's assets through substantive consolidation conflates issues. Live Oak's exclusivity under section 1121 has long since terminated. Thus, regardless of who is serving as the general partner of Live Oak, its assets can and very well may be impacted by the Plan and the Substantive Consolidation Motion. The Order at issue in this Appeal – which deals solely with the issue of whether the removal of LFM as Live Oak's general partner violated the stay – will therefore have no bearing on the Plan or the Substantive Consolidation Motion. Andrew thus cannot show any irreparable harm because any harm he fears is unrelated to the Order. As the Bankruptcy Court further

LA:4911-0385-1147.6 52011.00005

found, Andrew is an equity interest holder, so whether he would suffer some type of monetary injury (which is generally not "irreparable") is purely speculative and therefore not the type of "irreparable" harm warranting a stay. Since Andrew failed to satisfy the two most critical factors required for a stay pending appeal – irreparable harm and likelihood of success – the Bankruptcy Court's denial of the stay was well within its discretion.

**Third**, Andrew likewise fails to meet his burden of demonstrating that the third and fourth factors – the public interest and the harm to other parties – weigh in favor of a stay. In the event of a stay pending the Appeal, the Debtors and the Committee will have to incur substantial and wasteful litigation and expenses in additional litigation in an already expensive and litigious case. Andrew has failed to show that the Bankruptcy Court abused its discretion in denying a stay of the Order pending its Appeal, and this Panel should likewise deny the Motion.

## II.
## RELEVANT BACKGROUND

A.    **The Bankruptcy Cases and Andrew's Efforts to Seize Control of Live Oak**

On September 12, 2024, the LFM Debtors, including Live Oak Investments, L.P. ("Live Oak") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "LFM Petition Date") in the United States Bankruptcy Court

for the Northern District of California (the "<u>Bankruptcy Court</u>").[3] Those cases are being jointly administered for procedural purposes with the LFM case as the lead case.[4]

Live Oak is a limited partnership organized under California Law. On the Petition Date, LFM was its general partner.[5] LFM also holds an approximate 21% partnership interest in Live Oak. When Live Oak filed its Chapter 11 Case, its primary assets included cash totaling $3,141,039 and intercompany claims (valued at approximately $3.2 million) against several of its affiliated LFM Debtors.

The managerial rights and duties of the general partner are governed by the Limited Partnership Agreement of Live Oak Investments LP (the "<u>Partnership Agreement</u>") *See* Partnership Agreement, Art. 5.1. Thus, when LFM filed for bankruptcy, its duties as Live Oak's general partner included the management of Live Oak's cash assets, intercompany claims, and determining how Live Oak's Chapter 11 Case should proceed.

---

[3] Debtor Windscape Apartments, LLC, filed its chapter 11 petition on August 6, 2024. Debtors Pinewood Condominiums, LP, and Ponderosa Pines, LP, filed their chapter 11 petitions on October 2, 2024.

[4] Unless otherwise stated, all references to docket numbers herein are intended to refer to the docket entries in the Cases.

[5] In September 2024, LFM was the managing entity of more than 60 limited partnership and limited liability corporations, most of which owned real property as their primary assets. LFM filed chapter 11 bankruptcies for virtually all of these entities to address an alleged Ponzi scheme which involved LFM and its managed entities.

LA:4911-0385-1147.6 52011.00005

On October 7, 2025, two limited partners of Live Oak – the William N. Andrew and Sally G. Andrew Revocable Trust dated June 21, 2001 (the "Andrew Trust," and led by Andrew as trustee) and the Burgess Trust dated October 9, 2006 (the "Burgess Trust," and led by Ronald and Molly Burgess as trustees) – filed a *Notice of Partnership Meeting* [Docket No. 2530] (the "Notice"). The stated purpose of the meeting was to "remove LeFever Mattson Inc. as the General Partner of Live Oak Investments L.P." and to "appoint William Andrew as the new General Partner of Live Oak Investments L.P." on the purported ground that LFM violated the Partnership Agreement. Notice, at 2. Two days later, on October 9, 2025, the noticed partnership meeting was held, a vote was conducted, and Andrew was purportedly chosen to replace LFM as Live Oak's general partner. Immediately thereafter, Live Oak purportedly acted to: a) terminate the services of its chapter 11 counsel; b) employ Thomas P. Kelly III as its new bankruptcy counsel; and c) withdraw its endorsement of the Plan (as defined below). [*See* Docket No. 2613].

## B. The Bankruptcy Court Finds that Andrew's Actions Violated the Automatic Stay

On October 24, 2025, the Committee filed its *Motion to Declare Void Actions in Violation of the Automatic Stay Related to Live Oak Investments, LP* [Docket No. 2690] (the "Stay Violation Motion"), requesting entry of an order declaring the purported removal of LFM as general partner of Live Oak null and void because such removal violated the automatic stay of Bankruptcy Code. Andrew opposed the Stay

Violation Motion, [Docket No, 2800], arguing just as he does here that "[u]nder California law, upon the filing of a bankruptcy petition, a partner is automatically disassociated from the partnership" and therefore, "LFM [had] lost all right to participate in the management of Debtor." *Id.* at 8-9 (citing Cal. Corp. Code § 16601).

After a hearing and taking the matter under advisement, on November 20, 2025, the Bankruptcy Court entered its order granting the Stay Violation Motion. [*See* Docket No. 2891] (the "<u>Order</u>"). The Bankruptcy Court held that Live Oak's removal of LFM as general partner violated the automatic stay that arose on the LFM Petition Date, and accordingly, (a) denied attorney Kelly's employment; (b) reinstated Live Oak's prior chapter 11 counsel; and (c) denied Live Oak's request to withdraw from the Disclosure Statement and Plan. *See* Order at 5-6.

The Bankruptcy Court found that LFM's managerial responsibilities are property of the estate under section 541(c)(1) of the Bankruptcy Code. Therefore, the Bankruptcy Court explained, by stripping LFM of this property, "the limited partners who voted to oust [LFM] violated Bankruptcy Code § 362(a)(3), which prohibits 'any [post-petition] act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.'" Order at 3 (quoting 11 U.S.C. § 362(a)(3)). The Bankruptcy Court specifically rejected Andrew's argument that, under California law, the partnership meeting was somehow

not an act that altered LFM's property rights, finding that Andrew's reliance on California law "ignores certain fundamental principles of bankruptcy law," and "[n]othing in the Bankruptcy Code renders the economic v. managerial distinction meaningful in the context of the creation of the estate." *Id.* at 3, 5 (quoting *In re Envision Healthcare Corp.*, 655 B.R. 701, 711(Bankr. S.D. Tex. 2023)). The Bankruptcy Court further found that the pertinent language of the California Corporations Code §§ 15906.03 and 16603 are "impermissible *ipso facto* clauses that are inconsistent with Bankruptcy Code § 541(c)(1)(B) and thus violative of the Constitution's Supremacy Clause." *Id.* at 4.

## C.     The Plan and Substantive Consolidation Motion

On December 7, 2025, the LFM Debtors, KSMP, and the Committee (collectively, the "Plan Proponents") jointly filed the *Third Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 3054] (as may be amended and supplemented from time to time, the "Plan"). Pursuant to the Bankruptcy Court's order approving the related Disclosure Statement [Docket No. 3105] (the "Solicitation Procedures Order"), objections to confirmation of the Plan were required to have been filed by January 21, 2026. Solicitation Procedures Order at ¶ 18. Pursuant to the Plan, the Plan Proponents seek, among other things, the substantive consolidation of all of the LFM Debtors (including Live Oak) and KSMP and a Ponzi finding applicable to the

LA:4911-0385-1147.6 52011.00005

same entities. Andrew did not timely file an objection to the confirmation of the Plan.

On December 1, 2025, the Committee filed the *Amended Motion of the Official Committee of Unsecured Creditors for Substantive Consolidation of the Debtors and the KSMP Investment Entities and for Related Relief* [Docket No. 2943] (the "Substantive Consolidation Motion"). Pursuant to the Substantive Consolidation Motion, the Committee seeks the substantive consolidation of all of the LFM Debtors (including Live Oak) and KSMP. Objections to the Substantive Consolidation Motion were required to have been filed by January 21, 2026 and Andrew did not timely file an objection thereto.

**D.     The Appeal and the Stay Motions**

On December 5, 2025, Andrew appealed the Order to the United States Bankruptcy Appellate Panel of the Ninth Circuit (this "Panel"). *See* Docket No. 3037; B.A.P. No. NC-25-1238 (the "Appeal"). On December 21, 2025, Andrew filed his *Application for Appellate Stay* [Docket No, 3192] (the "BK Motion") with the Bankruptcy Court, seeking a stay of the Order pending this Appeal. The Committee timely filed the *Committee's Opposition to Application for Appellate Stay* [Docket No. 3350] on January 12, 2026.

The Bankruptcy Court conducted a hearing on the BK Motion on January 21, 2026 (the "Hearing").[6] At the conclusion of the Hearing, the Bankruptcy Court issued a bench ruling denying BK Motion (the "Bench Ruling"), and on January 22, 2026, the Bankruptcy Court entered the *Order Denying Motion for a Stay Pending Appeal* [Docket No. 3448] (the "Stay Order"). On January 21, 2026, while the Hearing was ongoing, Andrew filed the instant Motion.[7]

## III.
## ARGUMENT

### A.  Legal Standard

A discretionary stay pending appeal is an "extraordinary remedy." *In re Haynes*, 2015 WL 13916994, at *1 (C.D. Cal. Dec. 16, 2015); *see also United States v. Caraway*, 2013 WL 4017431, at *1 (N.D. Cal. Aug. 1, 2013) ("A stay is not a matter of right," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.") (internal quotations omitted).

---

[6] A true and correct of the transcript of the Hearing (the "Transcript") is attached to the Fiero Declaration as **Exhibit A**.

[7] As Andrew filed and served the Motion before the Bankruptcy Court had even completed reading its Bench Ruling, the Motion fails to comply with Federal Rule of Bankruptcy Procedure 8007(b)(2)(B) insofar as it does not "state any reasons given for the [Bankruptcy Court's] ruling."

LA:4911-0385-1147.6 52011.00005

Courts consider four factors with respect to a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)); *see also Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 843 (E.D. Cal. 2006) (same). "The burden of demonstrating that these factors weigh[] in favor of a stay lay with the proponent." *Fontes*, 111 F.4th at 981; *see also Irwin*, 338 B.R. at 843 (same). The first two factors – likelihood of success and irreparable injury – are "the most critical factors." *Fontes*, 111 F.4th at 981 (internal quotations omitted); *see also In re Rice*, 2020 WL 2079447, at *1 (Bankr. C.D. Cal. Apr. 23, 2020) (same). "The bankruptcy court has broad discretion in deciding whether to issue a stay pending an appeal." *Rice*, 2020 WL 2079447, at *1 (citing *In re Wymer*, 5 B.R. 802, 806 (B.A.P. 9th Cir. 1980)).

Where, as here, a bankruptcy court denies a discretionary motion for a stay pending appeal, an appellate court reviews such denial for abuse of discretion. *In re Greenberg*, 622 B.R. 60, 63 (S.D. Cal. 2020) (citing *In re Wymer*, 5 B.R. 802, 807 (B.A.P. 9th Cir. 1980)); *see also In re Irwin*, 338 B.R. 839, 844 (E.D. Cal. 2006) (citing cases). As set forth below, the Bankruptcy Court did not abuse its discretion

LA:4911-0385-1147.6 52011.00005

in denying Andrew's request for a stay pending appeal of the Order. Accordingly, the Motion should be denied.

## B.     The Bankruptcy Court Did Not Abuse Its Discretion in Determining that Andrew is Unlikely to Succeed on the Merits

In the Order, the Bankruptcy Court correctly found that LFM's prepetition contractual right to manage Live Oak was property of LFM's bankruptcy estate and thus protected by the automatic stay, which (among other things) prohibits "any [post-petition] act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "It is well settled that prepetition contract rights are included within the Bankruptcy Code's definition of bankruptcy estate property," and that such rights include "non-economic" rights such as management rights. *See Yun Hei Shin v. Altman (In re Altman)*, 2018 WL 3133164, at *5 (B.A.P. 9th Cir. June 26, 2018) (collecting cases).

While section 541 determines whether prepetition interests fall within the scope of the bankruptcy estate, state law defines the nature and extent of the debtor's property interest. *See Butner v. United States*, 440 U.S. 48, 55 (1979). And under California law, a contract right is "property." *See* Cal. Civ. Code §§ 654, 655. Therefore, under well-established bankruptcy law, prepetition contract rights, including management rights, constitute estate property under section 541(a) that is protected by the automatic stay. *See, e.g.*, *Altman*, 2018 WL 3133164, at *5 ("[U]nder the Operating Agreement, Mr. Altman had the prepetition contractual right

11

to manage DSF. The bankruptcy court correctly found that this non-economic contractual right to manage DSF was property of Mr. Altman's estate under § 541(a)(1) and therefore protected by the automatic stay."); *Gould v. Antonelli (In re Antonelli)*, 1993 WL 321584, at *6 (4th Cir. Aug. 23, 1993) ("When bankruptcy proceedings commenced, Antonelli's general partnership interests became the property of the Debtor's bankruptcy estate. Both the economic interest in the partnerships and the right to participation in the management of the partnerships' affairs vested in the estate.") (internal citation omitted); *Colonial Realty Co. v. River Bank Am. (In re Colonial Realty Co.)*, 122 B.R. 1, 4 (Bankr. D. Conn. 1990) (finding defendant lender's acts "in removing the debtor from such management control were direct acts to obtain possession of property of and from the estate."); *Envision Healthcare*, 655 B.R.at 711 ("Nothing in the Bankruptcy Code renders the economic v. managerial distinction meaningful in the context of the creation of the estate. Any such legal or equitable interest at the time of filing comes into the estate."); *In re Plunkett*, 23 B.R. 392, 394 (Bankr. E.D. Wis. 1982) (where investors attempted to remove a debtor as the managing general partner, the Bankruptcy Court held that the investors' actions were actions against the debtor's contractual right to manage the partnership property, which was property of the estate).

Andrew erroneously relies on various provisions of the California Corporations Code to support his argument that LFM had no contractual right to manage Live Oak.

*See* Motion at 11 – 12 (citing Cal. Corp. Code §§ 16601(6)(A) and 16603(1), which provides that upon a partner becoming a debtor in bankruptcy, the partner is "dissociated from a partnership" and the partner loses its "right to participate in the management."). As the Bankruptcy Court correctly explained, these provisions of the California Corporations Code constitute "impermissible *ipso facto* clauses that are inconsistent with Bankruptcy Code § 541(c)(1)(B) and thus violative of the Constitution's Supremacy Clause." Order at 4.

Accordingly, the Bankruptcy Court correctly found that section 541(c)(1)(A) – which provides that all prepetition contractual rights and interests become property of the estate upon the petition date – overrides any state law restrictions that would diminish such rights. *See Fursman v. Ulrich (In re First Prot., Inc.)*, 440 B.R. 821, 830 (B.A.P. 9th Cir. 2010); *In re B & M Land & Livestock, LLC*, 498 B.R. 262, 267 (Bankr. D. Nev. 2013); *Weiss v. All Year Holdings Ltd. (In re All Year Holdings Ltd.)*, 648 B.R. 434, 455-56 (S.D.N.Y. 2022).

The Bankruptcy Court therefore did not abuse its discretion in finding that Andrew "has not made a strong showing that he is likely to succeed on the merits. None of the cases that he cites in support of the motion addresses"[8] this fundamental

---

[8] As the Motion is but a rehash of the BK Motion, Andrew continues to cite these inapposite cases. For instance, *Mansdorf v. Epps*, 2011 U.S. Dist. LEXIS 171825 (N.D. Cal. Aug 1, 2011) deals with a trustee's motion for summary judgment against a law firm to recover partnership interests under state law fraudulent transfer law. *Mansdorf* does not address unenforceable *ipso facto* clauses or the scope of property

issue and Andrew failed to address the well-reasoned decision in *Envision Healthcare*, which is on all fours with the instant dispute, which the Bankruptcy Court found to be persuasive precedent. Transcript at 14:8 – 20.

Andrew's remaining contentions (which did not form the basis for the Bankruptcy Court's Order in any event) as to why he believes he is likely to succeed on the merits of the Appeal are equally misguided. That LFM was "paid out" is irrelevant. *See* Motion at 12 (citing Cal. Corp. Code § 15901.02). Although LFM was paid its allocable share of certain sale proceeds under the Partnership Agreement, the partnership contains other assets and LFM indisputably retains its management rights. For this additional reason, Andrew's contention that LFM has no economic or non-economic interests in Live Oak is meritless.

---

under section 541(a)(1); *see also Fotouhi v. Mansdorf*, 427 B.R. 798, 804 (N.D. Cal. 2010) (affirming bankruptcy court's finding that income earned by partner after commencement of bankruptcy proceedings was included in estate, and rejecting appellant's reliance on 11 U.S.C. § 541(a)(6), which provides that a bankruptcy estate does not include "earnings from services performed by an individual debtor after the commencement of the case."). Andrew's other case cites are equally inapplicable. *Johnson v. Johnson*, 2016 WL 1138178 (E.D. Cal. Mar. 23, 2016) involved a motion to dismiss claims arising from partnership agreement brought post-bankruptcy discharge, and does not deal with impermissible *ipso facto* clauses or the scope of property under section 541. Andrew's reliance on *Butner*, 440 U.S. at 55 again evidences a fundamental misunderstanding of bankruptcy law. *Butner* stands for the unremarkable proposition that, while section 541 defines whether certain interests are property of the estate, the property interests themselves are created and defined by state law. This principle ensures that a party's pre-petition property interest – such as LFM's management interests here – are not forfeited simply because they filed for bankruptcy.

LA:4911-0385-1147.6 52011.00005

Andrew's assertion that the Partnership Agreement is not assumable and assignable and the rights thereunder are not property of the estate, (*see* Motion at 13-15), also misses the point. Whether the Partnership Agreement is assumable and assignable was not at issue before the Bankruptcy Court and it is not at issue in this Appeal.[9] Andrew's argument that LFM breached the Partnership Agreement, (see Motion at 15-18), is likewise irrelevant; the instant question is not whether LFM breached the agreement, but whether the removal of LFM as general partner of Live Oak violated the automatic stay. Even if, *arguendo*, LFM had breached the Partnership Agreement, Andrew still violated the automatic stay by purporting to remove LFM as general partner.

## C. The Bankruptcy Court Correctly Found that Andrew Will Not Suffer Irreparable Harm

The Bankruptcy Court correctly found that Andrew will not suffer irreparable harm absent the issuance of a stay pending appeal. Andrew's argument that absent a

---

[9] As made clear by the Bankruptcy Court, no party (including Andrew) raised this issue in connection with the Stay Violation Motion – it was the Bankruptcy Court itself that raised the issue. Transcript at 5:15 – 6:6; 7:15 – 20. However, the Bankruptcy Court itself characterized the issue as a "red herring here, because during the course of this Chapter 11, no one has moved to assume or – no one has moved to assume or reject this contract. So the parties remain – so the parties remain in place." *Id.* at 7:9 – 14. Thus, in addition to Andrew being incorrect on the import of this argument, because he did not raise it before the Bankruptcy Court in connection with the Stay Violation Motion, it is not properly before this Panel in connection with the Appeal. *See, e.g., In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("We apply a general rule against entertaining arguments on appeal that were not presented or developed before the district court.") (cleaned up).

stay, Live Oak's assets will "vanish" due to the substantive consolidation of Live Oak with the other Debtors, (Motion at 18), is nonsensical. As the Bankruptcy Court found, the question of who controls Live Oak is irrelevant – "as the Committee asserts, the finding of a Ponzi scheme and the granting of the motion for a substantive consolidation, should those requests be approved, will apply no matter who controls Live Oak." Transcript at 15:2 – 5. The Bankruptcy Court is undeniably correct – regardless of who serves as Live Oak's general partner, Live Oak and its assets will be impacted by the Plan and the Substantive Consolidation Motion, or any other plan filed by another party in interest other than Live Oak. *See* Exclusivity Order. Because Live Oak no longer has exclusivity as to the proposal or solicitation of a plan, a stay of the Order would merely shift control of Live Oak back to Andrew without affecting the underlying Plan. Thus, even if issued, a stay of the Order could not, as Andrew suggests, "temporarily halt" activity in connection with confirmation of the Plan and the Substantive Consolidation Motion.[10]

---

[10] Andrew may attempt to argue that the Order prevented him from being able to object to confirmation of the Plan and/or the Substantive Consolidation Motion in any capacity, as he did at the Hearing before the Bankruptcy Court. The Bankruptcy Court, which certainly has the ability to construe its own orders, made clear that Andrew's reading of the Order was wrong. *See* Transcript at 11:12 – 12:18. After being told in no uncertain terms that he had standing to object, Andrew, who has been an active participant in the Bankruptcy Cases and has filed multiple objections to various relief being sought, still did not timely (or even untimely) object to the Substantive Consolidation Motion or confirmation of the Plan on his own behalf.

LA:4911-0385-1147.6 52011.00005

The Bankruptcy Court also correctly found that "a monetary injury is not normally an irreparable injury." Transcript at 15:6 – 7; *see also Doe v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) (noting that "monetary injury is not normally considered irreparable.") (internal quotations omitted). For this additional reason, Andrew fails to demonstrate that a stay pending appeal is warranted. *See id.* at 1058 (("[I]f the petition has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors."); *Irwin*, 338 B.R. at 854 ("As Appellant cannot show the threat of irreparable injury under any standard, Appellant's motion for stay can be denied on this basis alone."); *Rice*, 2020 WL 2079447, at *2 ("Since Debtor has not satisfied parts one and two of the four- prong test for issuing a stay pending appeal, this Court denies the Motion.").

## D.  <u>The Remaining Factors Weigh Against a Stay</u>

With regard to the final two factors – substantial injury to the non-moving parties and the public interest – Andrew fails to demonstrate that either factor warrants the extraordinary remedy of a stay. This is especially true since "the two most important elements" – likelihood of success and irreparable harm – weigh against the grant of a stay. Transcript at 17:9 – 14.

If a stay were to issue here, there would be substantial injury to other parties. Andrew will again reinstate himself as Live Oak's general partner and will initiate

numerous, costly litigations against LFM's affiliates in connection with LFM's alleged breach of the Partnership Agreement. Instead of focusing its efforts on Plan confirmation and paying creditors, LFM will be forced to defend itself in litigation with Live Oak. This will deplete estate assets and delay efficient administration of these bankruptcy proceedings. In arguing that the "only other party at issue" here is LFM, Andrew again fundamentally misunderstands the nature of these bankruptcy proceedings and the numerous parties affected by them. *See Bohm v. Howard (In re Howard)*, 422 B.R. 593, 604 (Bankr. W.D. Pa. 2010), *aff'd*, 2011 WL 578777 (W.D. Pa. Feb. 9, 2011) (finding substantial harm will result to other parties if a stay is issued where "Defendant desires to continue to spend the Mineral Rights proceeds during the pendency of her appeal. Certainly, these facts reflect that the bankruptcy estate, and its creditors, will be harmed if a stay of the Court's orders were to be issued."); *Dynamic Fin. Corp. v. Kipperman (In re N. Plaza, LLC)*, 395 B.R. 113, 126 (S.D. Cal. 2008) (denying stay pending appeal and pointing out "bankruptcy court's concerns over the ongoing delay in this case" and "that a stay would harm the bankruptcy estate.").

For largely the same reasons, the public interest would not be served by a stay. "The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization." *In re Babcock & Wilcox*, 2000 WL 533492, at *6 (E.D. La. May 3, 2000) (internal quotations omitted). Because the appeal lacks merit, it

18

would be a waste of party, estate, and judicial resources to stay the Order. A stay of the Order will also foster further litigation. During the pendency of his appeal, Andrew will try to reinstate himself as Live Oak's General Partner and initiate costly litigation between Live Oak and its Debtor affiliates. This will further deplete estate assets and delay efficient resolution of these cases for the benefit of the Debtors' stakeholders. *See ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 272 (S.D.N.Y. 2004) ("This Court finds that the public interest in the expeditious administration of bankruptcy cases as well as in the preservation of the bankrupt's assets for purposes of paying creditors, rather than litigation of claims lacking a substantial possibility of success, outweighs the public interest in resolving the issues presented here on appeal.").

The public interest is also served by preventing stay violations. *See Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002) ("The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law."); *Howard*, 422 B.R. at 604 ("[T]he public interest is served by not granting the Defendant a stay pending appeal because to do so would run counter to the statutory injunction (called the automatic stay) found at 11 U.S.C. § 362(a).")). Thus, if a stay is granted, the Panel would essentially be permitting Andrew's continued stay violation, to the detriment of the Debtors and its stakeholders. *See Howard*, 422 B.R. at 605 ("If this Court were to issue a stay of its

turnover order, this Court would in essence be acquiescing the Defendant's continued violation of the automatic stay in bankruptcy."). For this additional reason, public policy weighs heavily in favor of denying the Motion.

## IV.

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court deny the Motion.

Date: January 28, 2026

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ John D. Fiero*

John D. Fiero (CA Bar No. 136557)
Steven W. Golden (*Pro Hac Vice*)
Hayley R. Winograd (*Pro Hac Vice*)
Pachulski Stang Ziehl & Jones LLP
One Sansome Street, Suite 3430
San Francisco, CA 94104
Telephone: 415-263-7000
Facsimile: 415-263-7010
E-mail:    jfiero@pszjlaw.com
            sgolden@pszjlaw.com
            hwinograd@pszjlaw.com

Counsel for Appellee Official Committee
of Unsecured Creditors

LA:4911-0385-1147.6 52011.00005

# CERTIFICATE OF COMPLIANCE

1.    I certify that this Brief complies with the length limitation of Fed. R. Bankr. P. 8015(a)(7) because this Brief contains 4,909 words, excluding the parts of the Brief exempt from such rule.

2.    I certify that this Brief complies with the typeface and type style requirements of Fed. R. Bankr. P. 8015 because it has been prepared in a proportionately spaced typeface using Word, in 14-point Time New Roman.

Date: January 28, 2026

*/s/ John D. Fiero*
John D. Fiero (CA Bar No. 136557)

PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, CA 94104
Telephone: 415-263-7000
Facsimile: 415-263-7010
E-mail: jfiero@pszjlaw.com

LA:4911-0385-1147.6 52011.00005

## Certification Required by B.A.P. Rule 8015(a)-1(a)

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable judges of the Panel to evaluate disqualification or recusal:

| | |
|---|---|
| Appellant William Andrew<br>c/o Thomas P. Kelly III, Esq.<br>50 Old Courthouse Square, Suite 609<br>Santa Rosa, California 95404<br>Telephone: 707-545-8700<br>Facsimile: 707-542-3371<br>Email: tomkelly@sonic.net | Appellee Official Committee of Unsecured Creditors<br>John D. Fiero<br>Jason H. Rosell<br>Pachulski Stang Ziehl & Jones LLP<br>One Sansome Street, 34th Floor, Suite 3450<br>San Francisco, California 94104-4436<br>Telephone: 310-277-6910<br>Facsimile: 310-201-0760<br>Email: jfiero@pszjlaw.com,<br>      jrosell@pszjlaw.com |
| LeFever Mattson Inc.<br>Live Oak Investments LP.<br>Thomas B. Rupp & Tobias S. Keller<br>Keller Benvenutti Kim LLP<br>425 Market Street, 26th Floor<br>San Francisco, California 94105<br>Telephone: 415-496-6723<br>Facsimile: 650-636-9251<br>Email: trupp@kbkllp.com,<br>      tkeller@kbkllp.com | |

Date: January 28, 2026      */s/ John D. Fiero*
                                     John D. Fiero (CA Bar No. 136557)

                                     PACHULSKI STANG ZIEHL & JONES LLP
                                     One Sansome Street, Suite 3430
                                     San Francisco, CA 94104
                                     Telephone: 415-263-7000
                                     Facsimile: 415-263-7010
                                     E-mail:   jfiero@pszjlaw.com

LA:4911-0385-1147.6 52011.00005

## Certification Required by B.A.P. Rule 8015(a)-1(b)

The undersigned certifies that the following are known related cases and appeals:

24-10545 *In re LeFever Mattson Inc.*, United State Bankruptcy Court, Northern District of California, Santa Rosa Division

24-10511 *In re Live Oak Investments LP*, United State Bankruptcy Court, Northern District of California, Santa Rosa Division

Date: January 28, 2026      */s/ John D. Fiero*
_____
John D. Fiero (CA Bar No. 136557)

PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, CA 94104
Telephone: 415-263-7000
Facsimile:  415-263-7010
E-mail:   jfiero@pszjlaw.com

LA:4911-0385-1147.6 52011.00005